1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   PEDRO NAVARRO,

9                          Petitioner,          Case No. C18-1479-JCC-MAT

10          v.

11   JEFFERY UTTECHT,                            REPORT AND RECOMMENDATION

12                          Respondent.

13

14          <u>INTRODUCTION AND SUMMARY CONCLUSION</u>

15          This is a federal habeas action brought under 28 U.S.C. § 2254.  Petitioner Pedro Navarro

16   is a former state prisoner who was released from physical custody in January 2019 after he filed

17   his petition for writ of habeas corpus.  Petitioner seeks to challenge in this action his 2013 King

18   County Superior Court convictions on multiple counts of communicating with a minor for immoral

19   purposes and extortion.  Respondent has filed an answer to the petition and has submitted relevant

20   portions of the state court record including, at the Court's request, a copy of the trial transcript.

21   Petitioner has filed a response to respondent's answer.  This Court, having reviewed the petition,

22   all briefing of the parties, and the balance of the record, concludes that petitioner's petition for writ

23   of habeas corpus should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

FACTUAL/PROCEDURAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying petitioner's convictions as follows:

> Appellant Pedro Navarro used a cellular phone and social media to contact eleven boys in two different middle schools.  Pretending to be a girl, he would initiate friendly contact.  After a few days, his communication would become sexual.  He asked the boys, among other things, if they would send him nude photographs and if they would like oral sex.  He suggested that they could meet his brother who would perform oral sex on them.

> At trial, Navarro faced eleven counts of communication with a minor for immoral purposes.  Navarro was also charged with two counts of extortion for threatening two of the victims when they stopped responding to his communications.

> A jury acquitted Navarro on three of the communication counts and convicted him as charged on the remaining counts.  The jury found that Navarro committed each extortion with sexual motivation. . . .

(Dkt. 33, Ex. 2 at 2 (footnote omitted).)

Petitioner's original judgment and sentence was filed on October 11, 2013.  (*Id.*, Ex. 3.) Petitioner appealed from that judgment and, on June 29, 2015, the Washington Court of Appeals issued a published opinion affirming petitioner's convictions but reversing petitioner's sentence and remanding the matter back to the Superior Court for resentencing.  (*See id.*, Exs. 2, 4-7.) Petitioner moved for reconsideration of the Court of Appeals' opinion, but that motion was denied on July 22, 2015.  (*Id.*, Exs. 8-9.)

Petitioner next sought review by the Washington Supreme Court.  (*Id.*, Ex. 10.)  Petitioner presented the following two issues to the Supreme Court for review:

1.    Did the Court of Appeals improperly presume that the numerous instances of prosecutorial misconduct in closing arguments does not provide a basis for further review contrary to Washington case law?

2.    Was the cumulative effect of the numerous instances of prosecutorial

REPORT AND RECOMMENDATION
PAGE - 2

1    misconduct prejudicial?

2  (*Id.*, Ex. 10 at 1-2.)  The Supreme Court denied review without comment on January 6, 2016, and

3  the Court of Appeals issued a mandate terminating direct review on February 5, 2016.  (*Id.*, Exs.

4  11-12.)

5    On April 6, 2016, the Superior Court resentenced petitioner and entered an amended

6  judgment and sentence.  (*Id.*, Ex. 13.)  Petitioner appealed from the amended judgment.  (*Id.*, Ex.

7  14.)  The state conceded on appeal that the Superior Court erred by increasing the duration of

8  petitioner's term of confinement on remand and asked that the case be remanded again for

9  resentencing.  (*Id.*, Ex. 15.)  The Court of Appeals accepted the state's concession, reversed

10  petitioner's sentence, and remanded the case to the Superior Court to re-impose the original term

11  of confinement which was 114 months.  (*Id.*, Ex. 16.)  The Court of Appeals issued a mandate

12  terminating review on June 9, 2017.  (*Id.*, Ex. 17.)  The Superior Court entered a new judgment

13  and sentence reflecting the 114-month sentence on August 11, 2017.[1]  (*Id.*, Ex. 1.)

14    On May 9, 2016, while the appeal of his amended judgment was pending, petitioner filed

15  two separate personal restraint petitions in the Washington Court of Appeals.  (*See id.*, Exs. 18 -

16  25.)  The Court of Appeals consolidated the two petitions for review and, on March 1, 2018, issued

17  an order dismissing the petitions.  (*Id.*, Ex. 26.)  Petitioner sought review of the Court of Appeals'

18  order dismissing his personal restraint petitions in the Washington Supreme Court.  (*Id.*, Ex. 27.)

19  Petitioner presented the following twelve issues to the Supreme Court for review:

20    1.  Navarro was denied effective assistance of counsel at trial.  Where
     Navarro's trial attorney withheld exculpatory evidence and failed to adequately

21

22  _____

   [1] Petitioner appealed from the judgment and sentence entered in August 2017.  (*See* Dkt. 33, Exs. 32-34.)
   The Court of Appeals issued an unpublished opinion affirming the judgment of the Superior Court on January 22,
23  2019.  (*Id.*, Ex. 35.)  Petitioner did not seek further review by the Washington Supreme Court, and the Court of Appeals
   issued its mandate terminating review on March 15, 2019.  (*Id.*, Ex. 36.)

REPORT AND RECOMMENDATION
PAGE - 3

investigate the case, was Navarro denied his constitutional right to effective assistance of counsel and was Navarro entitled to an evidentiary hearing on the issue?

2. Navarro did not knowingly, voluntarily, or intelligently waive his right to testify. Where defense counsel misinforms Navarro of the consequences if he took the stand, did Navarro's attorney actually prevent him from testifying and was Navarro entitled to an evidentiary hearing on the issue.

3. Navarro was denied his constitutional right to present a defense by the trial court denying his motion for expert services. Where the trial court denied Navarro's motion for an expert based on an erroneous view of the law, did the trial court abuse its discretion and violate Navarro's constitutional right to present a defense and was Navarro entitled to an evidentiary hearing on the issue?

4. Navarro did not voluntarily consent to the search of his phone and effectively withdrew the consent, was the search of his phone valid?

5. The search warrant for Navarro's phone was overbroad and did not particularly describe the things to be seized. Where the police intend to seize things protected by the First Amendment, does the search warrant need to describe the things with "scrupulous exactitude"?

6. The search warrant for Navarro's phone was stale. Where the alleged crime happened through the sending of "text messages," and the last of the text messages was sent on February 27, 2012; and the police did not get possession of Navarro's phone until March 7, 2013; and the police did not obtain a search warrant for Navarro's phone until March 19, 2012, over three weeks from the date the crime ceased, was the search warrant stale?

7. Navarro did not voluntarily, knowingly, and intelligently waive his Miranda rights. Where Navarro did not understand his right to counsel and how to obtain counsel, did he voluntarily, knowingly, and intelligently waive his right to counsel?

8. Navarro was entitled to a lesser included offense and his attorney was ineffective for failing to request one. Where Navarro's attorney failed to request a lesser included offense, was she ineffective for doing so?

9. Navarro had an irreconcilable conflict and a complete breakdown in communications with his attorney. Where Navarro had an irreconcilable conflict and a complete breakdown in communications with his attorney, was he denied his constitutional right to counsel?

10. The issue of prosecutorial misconduct was not heard and determined

REPORT AND RECOMMENDATION
PAGE - 4

on the merits in Navarro's direct appeal and the interest of justice requires relitigation. Where an issue is only mentioned in passing by a reviewing court and is not reviewed pursuant to case law, was the issue heard and determined on the merits and does the interest of justice require relitigation?

11.    The prosecutor commented on Navarro's silence during closing argument. Where the prosecutor commented on Navarro's silence so the jury can infer guilt from such silence, did the prosecutor commit reversible error?

12.   The cumulative effect of the errors prejudiced Navarro. Where there are cumulative errors, was Navarro's trial fundamentally unfair and was Navarro prejudiced?

(*Id.*, Ex. 27 at 1-5.)

The Washington Supreme Court Commissioner issued a ruling denying review on July 24, 2018. (*Id.*, Ex. 28.) Petitioner moved to modify the Commissioner's ruling, but that motion was denied. (*Id.*, Exs. 29-30.) The Court of Appeals issued a certificate of finality in petitioner's consolidated personal restraint proceeding on October 26, 2018.[2] (*Id.*, Ex. 31.) Petitioner now seeks federal habeas review of his 2013 convictions.

## GROUNDS FOR RELIEF

Petitioner identifies the following eleven grounds for relief in his federal habeas petition:

1.    Ineffective assistance of counsel.

2.    Denial of a motion to substitute counsel.

3.    Navarro did not voluntarily consent to the search of his phone.

4.    Search warrant for the cell phone was overbroad.

5.    The search warrant was stale.

6.    Navarro did not voluntarily, knowingly, or intelligently waive his Miranda

---

[2] Petitioner filed additional applications for post-conviction relief in the state courts in 2018. (*See id.*, Exs. 37-51.) However, none of those applications appear to be relevant to issues pending in this action and the Court therefore need not discuss the details of those state court proceedings here.

REPORT AND RECOMMENDATION
PAGE - 5

rights.

7.      Navarro did not knowingly, intelligently, and voluntarily waive his right to testify.

8.      Navarro was denied his right to present a defense.

9.      Navarro received ineffective assistance of counsel by failing to request a lesser included offence.

10.     Prosecutorial misconduct.

11.     Cumulative error denied Navarro a fair trial.

(Dkt. 6 at 5, 7, 8, 10, 12, 14, 15, 17, 19, 21, 22.)

DISCUSSION

Respondent concedes that petitioner properly exhausted his eleven grounds for federal habeas relief by properly presenting the claims to the Washington Supreme Court as federal claims. (*See* Dkt. 32 at 7.)  Respondent argues, however, that none of petitioner's claims provide any basis for federal habeas relief.  (*Id*. at 13-35.)

Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

<u>Grounds One and Nine:  Ineffective Assistance of Counsel</u>

Petitioner asserts in his first ground for relief that his trial counsel rendered ineffective

REPORT AND RECOMMENDATION
PAGE - 7

assistance when she failed to adequately cross-examine witnesses with regard to inconsistent or exculpatory statements, and failed to investigate alleged exculpatory evidence.  (*See* Dkt. 6 at 5; Dkt. 39 at 31-41.)  Petitioner asserts in his ninth ground for relief that his trial counsel rendered ineffective assistance when she failed to request a lesser included offense instruction.  (Dkt. 6 at 19; Dkt. 39 at 82-88.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).  Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*.  Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness.  *Id*. at 688.  Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id*.  In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy.  *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a

REPORT AND RECOMMENDATION
PAGE - 8

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component.  *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard.  *Harrington*, 562 U.S. at 101.  Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Id*.  As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id*.

1.     *Failure to Elicit Exculpatory Testimony or to Investigate Exculpatory Evidence*

Petitioner asserts that counsel rendered ineffective assistance when she failed to introduce evidence that he deemed "exculpatory."  (*Id*. at 34-37.)  In particular, petitioner claims that victim KP told police the person who was texting him was driving a "70's greenish brown dodge 4-door," but then stated in a pretrial interview and at trial that the car "looked like a mustang."  (*Id*. at 34.)  Petitioner notes that he drives a "black 1986 Cadillac Eldorado 2-door."  (*Id*.)  Petitioner also alleges that KP told police "the person in the car was a white guy," which petitioner is not.  (*Id*. at 35-36.)  Petitioner argues that counsel should have confronted the victim with these inconsistencies and that doing so would have created reasonable doubt with respect to the charges pertaining to KP.  (*See id*.)

Petitioner also argues that counsel should have challenged two other victims, AD and DW,

REPORT AND RECOMMENDATION
PAGE - 9

1    with statements from their pretrial defense interviews that they received text messages after they

2    were told petitioner was in custody.  (*Id*. at 36-37.)  Petitioner believes doing so would have created

3    reasonable doubt because petitioner did not have his phone while in custody.  (*Id*. at 37.)  Finally,

4    petitioner asserts that one of the child victims, AD, told the defense investigator he saw a fellow

5    victim, TH, deleting something from his phone when police told TH they wanted to search it for

6    anything of evidentiary value.  (*Id*.)  Petitioner suggests that proper cross-examination on this issue

7    would have created reasonable doubt as to whether TH actually received the claimed text

8    messages.  (*Id*. at 37-38.)

9    With respect to the claim that counsel rendered ineffective assistance when she failed to

10   investigate exculpatory evidence, petitioner cites to victim KP's statement to police that the person

11   who was texting him got his number from a friend of his named "Alexis."  (*See* Dkt. 39 at 38.)

12   Petitioner argues that counsel should have located this individual as she could have testified that

13   she did not know petitioner.  (*See id*.)

14   Petitioner presented his ineffective assistance of counsel claim challenging counsel's

15   alleged failure to elicit exculpatory evidence from the victims and to investigate exculpatory

16   evidence to the state courts in his first personal restraint petition, and the state courts rejected the

17   claim.  (*See* Dkt. 33, Exs. 18, 26, 28.)  The Washington Court of Appeals evaluated the claim under

18   the *Strickland* standard and concluded that petitioner had not established either deficient

19   performance or prejudice.  (*Id*., Ex. 26 at 3-4.)  The Court of Appeals explained its decision as

20   follows:

21   Navarro's counsel made reasonable strategic decisions with regard to impeachment
     of the child victims.  The evidence he refers to was not, in fact, exculpatory.[3]  He

22

23   ――――――――――――――――
     [3] [Court of Appeals footnote 1] For instance, Navarro points to the statement of one of the victims that the
     person texting him obtained his telephone number from someone called "Alexis."  He claims he does not know a

REPORT AND RECOMMENDATION
PAGE - 10

1

2

3

4

     fails to identify any material inconsistency that counsel failed to address or evidence that counsel failed to investigate that would have changed the result of the proceeding.  Portions of Navarro's videotaped confession were played for the jury.  There is nothing in the record to indicate that if counsel had pursued the lines of investigation and questioning that Navarro suggests, the outcome of the trial would have been different.

5

(*Id.*)

6

     The Washington Supreme Court likewise rejected the claim in denying petitioner's

7

motion for discretionary review:

8

9

10

11

12

     First, Mr. Navarro argues that his trial attorney was ineffective in failing to highlight various witness statements he views as exculpatory.  To establish ineffective assistance of counsel, Mr. Navarro must show that counsel's performance was objectively unreasonable and that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  An attorney's strategic and tactical decisions are not subject to second guessing.  *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).  If petitioner fails to establish either element of an ineffective assistance claim, this court need not address the other element.  *Hendrickson*, 129 Wn.2d at 78.

13

14

15

16

17

     Mr. Navarro argues that one victim told police that the person texting him was watching his house and driving a different car than the one Mr. Navarro owns and originally described the perpetrator as a white male.  This victim also allegedly changed his story as to how the perpetrator got his number.  Additionally, two other victims told defense investigators that they received text messages after Mr. Navarro was in custody, and one victim saw another victim delete text messages on his phone when police said they wanted to search it.  Mr. Navarro argues that defense counsel should have used this evidence in cross-examining the victims to show that they had incorrectly identified the perpetrator.

18

19

20

     While perhaps counsel could have chosen to challenge the witnesses on this basis, it would have been pointless to do so.  Police obtained the number used to text the victims and identified it as the number for Mr. Navarro's phone.  Moreover, Mr. Navarro voluntarily came to the police station and made a statement admitting that he had exchanged inappropriate emails with children, and he gave police

21

22

23

person by this name and posits that his counsel could have secured testimony from "Alexis" to confirm that fact.  But, as the State points out, given Navarro's videotaped confession to the offenses involving the victim, evidence suggesting that the victim may have been mistaken about how Navarro obtained his number would not have undermined the outcome.

REPORT AND RECOMMENDATION
PAGE - 11

1
2
3
4

    consent to examine his phone, providing them with his password. He explained that he was cooperating because he was ashamed of his behavior and needed help. Given this evidence, the identification of the perpetrator was not a fruitful avenue of attack for defense counsel. Counsel could have made a reasonable strategic decision to not attack the victims on ultimately meaningless inconsistencies. And in any event, Mr. Navarro cannot demonstrate prejudice. In sum, this claim is frivolous because it lacks any basis in law or in fact.

5

(*Id.*, Ex. 28 at 2-3.)

6
7
8
9
10
11
12
13
14
15
16
17
18

    Petitioner offers nothing in these proceedings to overcome the presumption that counsel's decisions regarding how to pursue impeachment of the child victims constituted sound trial strategy. Petitioner also fails to demonstrate that the inconsistencies he identifies were, in fact, exculpatory or could have conceivably altered the outcome of his trial. (*See* Dkt. 33, Ex. 21 at 10-11 n.5.) Finally, with respect to petitioner's claim regarding the adequacy of counsel's investigation, as the Court of Appeals correctly noted, securing the testimony of "Alexis" to confirm that petitioner did not know this individual would not have undermined the outcome of the charges involving KP, the charges to which this testimony would allegedly have been relevant, given petitioner's videotaped confession to the offenses involving KP. (*See* Dkt. 42, Ex. 52 at 64-87, 90-111.) The state courts reasonably applied clearly established federal law in rejecting petitioner's claim alleging that counsel rendered ineffective assistance in failing to introduce or investigate exculpatory evidence. Petitioner's federal habeas petition should therefore be denied with respect to his first ground for relief.

19

       2.   *Failure to Request Lesser Included Offense Instruction*

20
21
22
23

    Petitioner asserts that counsel rendered ineffective assistance when she failed to request a lesser included offense instruction for the communication with a minor for immoral purposes and extortion charges. (Dkt. 6 at 19; Dkt. 39 at 82-88.) Petitioner does not identify in his petition the lesser included offenses he believes counsel should have requested instructions for. In his personal

REPORT AND RECOMMENDATION
PAGE - 12

restraint proceedings, petitioner argued that he was entitled to have the jury instructed on the crime of attempted extortion as a lesser-included offense of extortion in the first degree because he attempted, but did not succeed, in obtaining property or services from his victims. (*See* Dkt. 33, Ex. 26 at 4.)

The Washington Court of Appeals rejected this claim, explaining that the statutory definition of extortion under Washington law includes an "attempt to obtain" property or services from the victim, and that "[t]o obtain or attempt to obtain is one and the same crime." (*Id*., Ex. 26 at 4 (internal quotation and citation omitted).)  The Court of Appeals further explained that petitioner successfully issued threats and that "[t]he evidence did not support the inference that he committed the crime of attempted extortion."  (*Id*.)  Because petitioner was not entitled to an instruction on attempted extortion, counsel's failure to request such an instruction did not constitute deficient conduct nor could it have conceivably prejudiced petitioner.

In his response to respondent's answer, petitioner argues at length that he was entitled to an instruction on the crime of coercion as a lesser included offense of extortion.  (Dkt. 39 at 82-88.)  Petitioner presented this argument to the state courts for the first time in his reply to the state's response to his personal restraint petition.  (Dkt. 33, Ex. 22 at 24-25.)  The Washington appellate courts declined to consider the argument because it was raised for the first time in a reply brief. (*See id*., Ex. 26 at 14 n.3; Dkt. 28 at 5.)  Respondent argues here that petitioner cannot show deficient performance because, at the time of trial, no Washington case law held that coercion was a lesser-included offense of extortion and counsel's failure to request the instruction therefore cannot be deemed deficient performance.  (Dkt 32 at 32.)  Petitioner offers nothing in his responsive brief to refute this argument.

Respondent further argues that petitioner cannot show that coercion is actually a lesser

REPORT AND RECOMMENDATION
PAGE - 13

included offense of extortion under Washington law. (*See id*.) Under Washington law, a party seeking a lesser-included offense instruction must satisfy the two-prong test established in *State v. Workman*, 90 Wn.2d 443 (1978), which requires the satisfaction of both legal and factual conditions before a party is entitled to such an instruction. *Id*. at 447-48. "Under the first prong of the test (the legal prong), the court asks whether the lesser included offense consists solely of elements that are necessary to conviction of the greater, charged offense." *State v. Condon*, 182 Wn.2d 307, 318 (2015) (citing *Workman*, 90 Wn.2d at 447-48). "Under the second (factual) prong, the court asks whether the evidence presented in the case supports an inference that only the lesser offense was committed, to the exclusion of the greater, charged offense." *Id*.

Under Washington law, the definition of extortion is "knowingly to obtain or attempt to obtain by threat property or services of the owner, and specifically includes sexual favors." RCW 9A.56.110. A person commits the crime of extortion in the first degree "if he or she commits extortion by means of a threat." RCW 9A.56.120. A person commits the crime of coercion "if by use of a threat he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from, or to abstain from conduct which he or she has a legal right to engage in." RCW 9A.36.070. While both offenses share the common element of a "threat," the crimes clearly require proof of different elements. Moreover, as respondent correctly points out, even assuming coercion was a lesser included offense of the crime of extortion, because the evidence showed that petitioner clearly committed the crime of extortion, he would not have been entitled to such an instruction. Petitioner fails to demonstrate that he was denied effective assistance of counsel relating to counsel's failure to request a lesser included offense instruction and, thus, petitioner's federal habeas petition should be denied with respect to his ninth ground for relief.

///

REPORT AND RECOMMENDATION
PAGE - 14

<u>Ground Two:  Denial of Motion to Substitute Counsel</u>

Petitioner asserts in his second ground for relief that he and his attorney had a complete breakdown in communications and that the trial court violated his constitutional right to counsel when it denied his request for substitution of counsel.  (Dkt. 6 at 7; Dkt. 39 at 41-44.)  Petitioner's request for new counsel was made pretrial and was apparently based on petitioner's concern that counsel had refused to do any cross-examination of witnesses during pretrial interviews.  (*See* Dkt. 33, Ex. 18, Appendix T.)

The Sixth Amendment not only guarantees a criminal defendant counsel of reasonable competence, it also guarantees a right to representation free of conflicts.  *Wood v. Georgia*, 450 U.S. 261, 272 (1981).  The Sixth Amendment does not, however, guarantee an accused a "meaningful attorney-client relationship."  *See Morris v. Slappy*, 461, U.S. 1, 13-14 (1983).  Thus, not every conflict between an accused and his counsel implicates the Sixth Amendment.  *See Schell v. Witek*, 218 F.3d 1017, 1027 (9th Cir. 2000).

The Ninth Circuit has held that a conflict between an accused and his counsel only infringes on the accused's Sixth Amendment rights "where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Stenson v. Lambert*, 504 F.3d 873 (9th Cir. 2007) (citing *Schell*, 218 F.3d at 1026); *accord Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005) (nature and extent of conflict must be so great as to "depriv[e] the defendant of representation guaranteed by the Sixth Amendment"). "Disagreements over strategical or tactical decisions do not rise to [the] level of a complete breakdown in communication." *Stenson* 504 F.3d at 886 (citing *Schell*, 218 F.3d at 1026).  The Ninth Circuit has identified three factors a court should consider in determining whether an irreconcilable conflict existed: (1) the extent of the conflict; (2) whether the trial judge made an

REPORT AND RECOMMENDATION
PAGE - 15

appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute

counsel. *Stenson*, 504 F.3d at 886; *Daniels*, 428 F.3d at 1197.

The Washington appellate courts rejected petitioner's claim challenging the trial court's

denial of his motion to substitute counsel. The Washington Court of Appeals explained its

conclusion as follows:

> Before trial, Navarro filed a motion to discharge appointed counsel, the second lawyer to represent him in the case. Navarro informed the court that he lacked confidence in counsel's ability to vigorously represent him, stating that counsel believed he was guilty and refused to cross examine witnesses. After noting that cross examination is not a part of pretrial interviews and confirming that Navarro had no other basis for his motion, the court denied the motion. The matter proceeded to trial and Navarro did not raise the issue again. Navarro challenges the trial court's denial of his motion.

> "A defendant does not have an absolute, Sixth Amendment right to choose any particular advocate." State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997). To warrant substitution of counsel, a criminal defendant must show good cause, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. Generally, the defendant's loss of trust or confidence in the defendant's counsel is not a sufficient reason to appoint a new counsel. Stenson, 132 Wn.2d at 734. A trial court must inquire into "(1) the reasons given for the dissatisfaction, (2) the court's own evaluation of counsel, and (3) the effect of any substitution upon the scheduled proceedings." Stenson, 132 Wn.2d at 734. "[A] trial court conducts adequate inquiry by allowing the defendant and counsel to express their concerns fully." State v. Shaller, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007).

> Navarro claims that the court failed to conduct a sufficient inquiry into the basis for his motion. But the court allowed Navarro the opportunity to express all of his concerns. Navarro did not allege an irreconcilable conflict or a complete breakdown in communication with counsel. Navarro fails to establish that the court failed to adequately inquire or abused its discretion when it denied his motion to substitute counsel.

(Dkt. 33, Ex. 26 at 5-6.)

The Washington Supreme Court, in its ruling denying review, likewise rejected petitioner's

claim regarding the denial of his request to substitute counsel:

REPORT AND RECOMMENDATION
PAGE - 16

1
2
3
4
5

> Mr. Navarro contends that the trial court abused its discretion in denying his motion to substitute counsel.  Before trial, Mr. Navarro moved to discharge appointed counsel owing to disagreements about trial strategy in cross-examining witnesses. The trial court properly denied the motion, since such disagreements are not a basis for substitution of counsel.  *State v. Stenson*, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997).  And the trial court allowed Mr. Navarro to air all of his grievances concerning counsel's representation, which he did not renew after trial began.  In these circumstances, Mr. Navarro's claim is frivolous.

6    (*Id.*, Ex. 28 at 5.)

7          The United States Supreme Court's holdings on Sixth Amendment conflicts of interest

8    have been limited to cases involving actual conflicts based on multiple concurrent representation

9    of criminal defendants.  *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002); *Cuyler v. Sullivan*, 446

10   U.S. 335, 348 (1980).  In *Mickens*, the Court made clear that any extension of its Sixth Amendment

11   conflict jurisprudence beyond this context remained an open question.  *Id.* at 176.  Petitioner's

12   conflict claim does not fall within the scope of the Supreme Court's Sixth Amendment

13   jurisprudence and the state court's adjudication of the claim therefore cannot be deemed contrary

14   to any clearly established federal law.  *Brewer*, 378 F.3d at 955.

15         As explained above, the Ninth Circuit's jurisprudence in this area is more expansive in that

16   it is not confined to claims alleging an actual conflict of interest but incorporates as well Sixth

17   Amendment claims alleging an irreconcilable conflict amounting to the constructive deprivation

18   of counsel.  The state court's decision with respect to petitioner's Sixth Amendment claim was

19   consistent with that body of jurisprudence, and the court reasonably rejected the claim as nothing

20   in the record demonstrates that there was such a substantial conflict between petitioner and his

21   appointed counsel that he was effectively denied his Sixth Amendment right to counsel.

22   Petitioner's federal habeas petition should therefore be denied with respect to his second ground

23   for relief.

REPORT AND RECOMMENDATION
PAGE - 17

1

<u>Grounds Three, Four and Five:  Search and Seizure Claims</u>

2

3

4

5

6

7

8

9

10

Petitioner asserts in his third ground for relief that he did not voluntarily consent to the search of his phone and also that he effectively withdrew his consent after his interrogation by police was over.  (*See* Dkt. 6 at 8; Dkt. 39 at 45-49.)  Petitioner asserts in his fourth ground for relief that the search warrant obtained for the search of his cell phone was overbroad and did not describe with particularity the things to be seized.  (*See* Dkt. 6 at 10; Dkt. 39 at 49-58.)  Petitioner asserts in his fifth ground for relief that the search warrant obtained for the search of his cell phone was stale.  (*See* Dkt. 6 at 12; Dkt. 39 at 59-60.)  Respondent asserts that these three claims, all of which implicate Fourth Amendment concerns, are not cognizable in this federal habeas proceeding.  (Dkt. 32 at 21-22.)  Respondent is correct.

11

12

13

14

15

16

17

18

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that federal habeas review of a Fourth Amendment claim is barred unless the petitioner can show that he was "denied an opportunity for full and fair litigation of that claim at trial and on direct review."  *Id*. at 494 n. 37.  The Court reasoned that because Fourth Amendment claims turn on police misconduct and not on actual guilt or innocence, they have "no bearing on the basic justice of [one's] incarceration."  *Id*. at 491-92 n. 31.  The relevant inquiry is whether the petitioner was afforded a full and fair hearing, not whether the state court reached a correct resolution.  *See Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994).

19

20

21

22

23

The record demonstrates that petitioner had an avenue to challenge the admissibility of the evidence in the trial court under Washington Superior Court Criminal Rule (CrR) 3.6 which provides a process through which criminal defendants may seek to suppress unlawfully obtained evidence.  (*See* Dkt. 39, Ex. 5.)  Petitioner also had the opportunity to pursue his search and seizure claims in the Washington appellate courts on post-conviction review and he did, in fact, do so.

(*See* Dkt. 33, Ex. 26 at 10-11; Dkt. 28 at 4-5.)  Because petitioner had an opportunity to litigate his Fourth Amendment claims in the state courts, his search and seizure claims are not cognizable in this federal habeas action.  Petitioner's federal habeas petition should therefore be denied with respect to his third, fourth, and fifth grounds for relief.

<u>Ground Six:  Waiver of *Miranda* Rights</u>

Petitioner asserts in his sixth ground for relief that he did not knowingly, voluntarily, and intelligently waive his *Miranda* rights.  (Dkt. 6 at 14, Dkt. 39 at 61-71.)  Petitioner claims that while the police initially provided proper *Miranda* warnings, their responses to his questions regarding appointment of counsel that arose during the course of the interrogation were contradictory and confusing.  (*See id*.)

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  This privilege applies in the context of custodial interrogations, *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), and is binding on the states, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).  In *Miranda*, the Supreme Court identified certain procedural safeguards which must precede an in-custody interrogation.  *Miranda*, 384 at 460-61.  Specifically, the police must advise a person who has been taken into custody, or deprived of his freedom in any significant way, of his right to remain silent and his right to the presence of an attorney during questioning.  *Id*. at 444.  An individual may waive these rights if the waiver is made voluntarily, knowingly, and intelligently.  *Id*.

A waiver is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  And, a waiver is knowing and intelligent if it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Id*.  A waiver may be

express or implied. *See North Carolina v. Butler*, 441 U.S. 369, 373-4 (1979). "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421 (internal quotation and citations omitted).

The Washington appellate courts rejected petitioner's claim that he did not make a knowing, intelligent, and voluntary waiver of his *Miranda* rights. The Washington Court of Appeals ruled as follows in denying petitioner's personal restraint petition:

> Navarro claims that the trial court abused its discretion by admitting portions of his recorded statements to police officers.
>
> Navarro went to the police station to discuss an unrelated complaint and was then interviewed by two detectives who were investigating reports of his sexual and threatening communications with minors. He waived his constitutional rights and agreed to talk. He acknowledged sending inappropriate messages to minors and making threats.
>
> At later points in the interview, Navarro asked the officers if he should seek the advice of a lawyer. He asked what would happen if he asked for an attorney and other questions related to the appointment of counsel. The officer reiterated that Navarro had the right to an attorney and told him they would end the conversation if he requested one. Navarro continued talking to the officers.
>
> Following a CrR 3.5 hearing, the trial court concluded that Navarro was properly advised of his rights and waived them, but unequivocally requested counsel at the point that he referred to a public defender. The court admitted the statements he made before that point and suppressed all statements made after that point. Navarro challenges the court's ruling and claims that although he was advised of his rights under <u>Miranda</u>, the State failed to prove that he understood those rights when he signed a written waiver and agreed to talk to the police.
>
> Navarro claims that the trial court failed to consider all of the factors that may be relevant to waiver. In particular, he claims that he has mental health issues and that he was under the influence of drugs and alcohol. There is nothing in the record to indicate that mental health issues or drugs or alcohol affected Navarro's ability to understand and voluntarily waive his constitutional rights. His argument contradicts his statement during the interview denying use of alcohol or drugs on the day in question. Navarro fails to demonstrate constitutional error in the admission of some of his pretrial statements.

REPORT AND RECOMMENDATION
PAGE - 20

1

2    (Dkt. 33, Ex. 26 at 6-7 (footnote omitted).)

3         The Washington Supreme Court, in its ruling denying review, likewise rejected petitioner's

4    *Miranda* claim:

5         Mr. Navarro contends that he did not knowingly, intelligently, and voluntarily
         waive his *Miranda* rights.  During his interview at the police station, Mr. Navarro
6        asked officers if he should seek the advice of an attorney and what would happen
         if he requested counsel.  The officers told Mr. Navarro that he had the right to an
7        attorney and that they would end the conversation if he requested one.  Mr. Navarro
         persisted in talking to the officers.  The trial court held a CrR 3.5 hearing on the
8        admissibility of Mr. Navarro's recorded statements and held that Mr. Navarro
         was properly advised of his rights and waived them, but that he unequivocally requested
9        counsel when he referred to counsel.  The court admitted the statements Mr.
         Navarro made before that point and suppressed all statements made thereafter.  Mr.
10       Navarro provides no competent, admissible evidence or factual basis to challenge
         the trial court's ruling from the CrR 3.5 hearing.  Accordingly, this claim is
11       frivolous.

12   (*Id.*, Ex. 28 at 6 (footnote omitted).)

13        The state court determination that petitioner's waiver of his *Miranda* rights was knowing

14   and intelligent is a finding of fact which is subject to the presumption of correctness set forth in §

15   2254(e)(1).  Petitioner fails to rebut this presumption by clear and convincing evidence.  Petitioner

16   asserts that he did not understand his right to counsel and that the police detectives confused him

17   about the procedure for obtaining an attorney.  However, the record adequately supports the

18   conclusion that petitioner understood and waived his *Miranda* rights at the outset of the interview.

19   (*See* Dkt. 42, Ex. 52 at 65-67.)  It was well into the interview when petitioner asked detectives if

20   they thought he needed an attorney.  (*Id.*, Ex. 52 at 99.)  Detectives advised petitioner they could

21   not answer that question, but then explained what would happen if he did request an attorney.  (*Id.*,

22   Ex. 52 at 100-01.)

23        Petitioner continued with the interview for a short period of time before raising the issue

REPORT AND RECOMMENDATION
PAGE - 21

1  of legal advice again.  (*See id.*, Ex. 52 at 111-12.)  After detectives responded to petitioner's

2  continued inquiries about contacting an attorney, petitioner again continued with the interview for

3  a more substantial period of time.  (*See id.*, Ex. 52 at 112-147.)  The statements made by petitioner

4  following his second inquiry regarding counsel were suppressed by the trial court following a CrR

5  3.5 hearing.  (*See id.*, Ex. 53 at 64-66.)  To the extent petitioner has any legitimate argument

6  concerning confusion over the procedure for obtaining counsel, it appears clear that the statements

7  petitioner made to detectives after that confusion arose were suppressed.  The state courts

8  reasonably rejected petitioner's *Miranda* claim and petitioner's federal habeas petition should

9  therefore be denied with respect to his sixth ground for relief.

10                    <u>Ground Seven:  Right to Testify</u>

11         Petitioner asserts in his seventh ground for relief that he did not knowingly, intelligently,

12  and voluntarily waive his right to testify.  (*See* Dkt. 6 at 15; Dkt. 39 at 71-78.)  Petitioner contends

13  that he was actually prevented from testifying by his attorney who misinformed him of the

14  consequences of taking the stand.  (*Id.*)  In particular, petitioner claims that his attorney

15  misinformed him that if he took the stand the state would be able to introduce a juvenile

16  adjudication for a sexual offense, and it was on this basis alone that petitioner chose not to testify.

17  (*See* Dkt. 39 at 77.)

18         The United States Supreme Court has recognized that a criminal defendant has a

19  constitutional right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987). The

20  Supreme Court has also recognized "that the accused has the ultimate authority to make certain

21  fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his

22  or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (citations

23  omitted).

REPORT AND RECOMMENDATION
PAGE - 22

A defendant's relinquishment of his right to testify must be knowing and intentional. *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). However, a defendant's waiver of his right to testify need not be explicit. *Id.* Rather, "waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." *Id.* at 1095 (citing *Joelson*, 7 F.3d at 177). A defendant is also "presumed to assent to his attorney's tactical decision not to have him testify." *Id.* "When a defendant remains 'silent in the face of his attorney's decision not to call him as a witness,' he waives the right to testify." *Id.* (citing *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993)).

The Washington appellate courts rejected petitioner's claim concerning his right to testify in petitioner's personal restraint proceedings. In so doing, the state courts concluded that petitioner had not provided sufficient evidence to support his claim that his waiver was not knowing and voluntary because his attorney had misinformed him that if he testified, the state would be able to introduce a juvenile adjudication for a sexual offense. (*See* Dkt. 33, Ex. 26 at 12-13, Ex. 28 at 3-4.) The Washington Supreme Court went on to find that petitioner had not shown his testimony would have materially aided his defense and therefore had not shown actual and substantial prejudice in relation to this claim as is necessary to qualify for post-conviction relief. (*Id.*, Ex. 28 at 3-4.)

Petitioner fails to demonstrate that the state court adjudication of this claim was contrary to, or constituted an unreasonable application of, clearly established Supreme Court precedent, nor has he demonstrated that the decision was based on an unreasonable determination of the facts. As the state courts noted, the only evidence provided by petitioner to support his claim was an unsworn affidavit in which he claims he changed his mind about testifying after he was

REPORT AND RECOMMENDATION
PAGE - 23

misinformed by counsel.  Petitioner's unsworn affidavit does not suffice to support his claim that he was misinformed by counsel and that his waiver of his right to testify was therefore not knowingly and voluntarily made.  (*See* Dkt. 39, Ex. 6.)  Moreover, the testimony petitioner claims he would have offered, including that he did not know any of the alleged victims, that he let a friend use his phone, and that he was set up, likely would not have aided his defense given the portions of petitioner's videotaped statement admitted at trial which included a confession to the offenses involving at least one of the victims.  (*See id.*; Dkt. 42, Ex. 52 at 63-87, 90-111.)  Petitioner's federal habeas petition should be denied with respect to his seventh ground for relief.

<u>Ground Eight:  Right to Present a Defense</u>

Petitioner asserts in this eighth ground for relief that he was denied his right to present a defense when the trial court denied his motion for expert services.  (*See* Dkt. 6 at 17; Dkt. 39 at 79-82.)  Petitioner claims that he requested expert services to prepare a "sexual motivation assessment," which he believed was necessary to adequately defend against a sexual motivation enhancement with respect to the first-degree extortion charges.  (*See id.*)

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (internal citations omitted).  Criminal defendants have the right "to present and have considered by the jury all relevant evidence to rebut the State's evidence on all elements of the offense charged."  *Montana v. Egelhoff*, 518 U.S. 37, 41-42 (1996).  The right to present a defense is, however, not absolute.  *Id.* at 42.  "The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Id.*

1    (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).  A state court's decision to exclude evidence

2    "must be so prejudicial as to jeopardize the defendant's due process rights." *Tinsley v. Borg*, 895

3    F.2d 520, 530 (9th Cir. 1990).

4         The Washington appellate courts rejected petitioner's claim regarding the denial of expert

5    services in his personal restraint petition.  The Washington Court of Appeals explained its

6    conclusion as follows:

7         Navarro contends that the court abused its discretion in denying his motion
        for funds for an expert witness to prepare a sexual motivation assessment.  He
8        challenges the trial court's conclusion that such an assessment was unlikely to be
        accepted in the general scientific community.

9
        CrR 3.1 authorizes payment for expert services when necessary to an
10       adequate defense.  CrR 3.1(f)(1); State v. Young, 125 Wn.2d 688, 691, 888 P.2d
        142 (1995).  Whether expert services are necessary for an indigent defendant's
11       adequate defense lies within the sound discretion of the trial court, and the trial
        court's exercise of discretion will not be overturned absent a clear showing of
12       substantial prejudice.  Young, 125 Wn.2d at 691; see also City of Mt. Vernon v.
        Cochran, 70 Wn. App. 517, 524, 855 P.2d 1180 (1993) (appointment of expert for
13       indigent defendant is discretionary; there is no "black letter" rule to apply in
        determining whether expert must be appointed), review denied, 123 Wn.2d 1003
14       (1994).

15        The record does not disclose the basis for Navarro's request below.  The
        trial court's order indicates that the court considered Navarro's motion and the
16       pleadings provided to the Office of Public Defense (OPD) and OPD's decision, but
        those underlying materials have been sealed.  Navarro fails to meet his burden to
17       demonstrate that the requested funds for expert services were necessary to provide
        an adequate defense.  The fact that Navarro was charged with committing extortion
18       with sexual motivation, does not, in of itself, establish that the court's decision was
        an abuse of discretion.  Navarro fails to demonstrate error or prejudice.

19

20   (Dkt. 33, Ex. 26 at 4-5.)

21        The Washington Supreme Court likewise rejected the claim in its ruling denying

22   discretionary review:

23        Mr. Navarro contends that the trial court denied him his right to present a defense

REPORT AND RECOMMENDATION
PAGE - 25

by denying his motion for expert services. But there is no right to obtain expert services; such requests are left to the trial court's discretion. CrR 3.1; *State v. French*, 157 Wn.2d 593, 607, 141 P.3d 54 (2006). Again, Mr. Navarro makes only a bare allegation in support of this claim, providing no factual basis to show that the trial court abused its discretion. This claim also lacks any basis in fact, and Mr. Navarro cannot demonstrate prejudice.

(*Id*., Ex. 28 at 4.)

Respondent argues that petitioner's claim regarding the denial of expert services is not based on clearly established federal law because the Supreme Court has not held that a defendant is entitled to the type of expert requested by petitioner. (Dkt. 32 at 27.) The Supreme Court has held that a defendant in a capital case is entitled to the appointment of a psychiatric expert where the defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial. *Ake v. Oklahoma*, 470 U.S. 68, 74 (1985); *see also*, *McWilliams v. Dunn*, 137 S. Ct. 1790, 1798 (2017). The Supreme Court did not hold in *Ake* that a defendant has a right to the appointment of such an expert in every case, *see Ake*, 470 U.S. at 82-3, and the Court has reserved judgment on whether due process requires the appointment of other types of experts, *see Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985). Petitioner cites to no clearly established Supreme Court precedent that requires appointment of an expert for the purpose identified in the petition. The state court's adjudication of the claim therefore cannot be deemed contrary to any clearly established federal law. *Brewer*, 378 F.3d at 955.

Moreover, even assuming the claim were based on clearly established federal law, petitioner fails to demonstrate that the state court adjudication of the claim was contrary to existing law. There is, in fact, no evidence in the record explaining what a "sexual motivation assessment" would consist of or how such an assessment would have assisted petitioner defense. Petitioner's federal habeas petition should therefore be denied with respect to his eighth ground for relief.

REPORT AND RECOMMENDATION
PAGE - 26

Ground Ten:  Prosecutorial Misconduct

Petitioner asserts in his tenth ground for federal habeas relief that there were several instances of prosecutorial misconduct during closing argument.  (*See* Dkt. 6 at 21; Dkt. 39 at 89-101.)  When a prosecutor's conduct is placed in question, unless the conduct impermissibly infringes on a specific constitutional right, the standard of review is the "narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974).  To obtain relief on a claim of prosecutorial misconduct, a federal habeas petitioner must do more than show that "the prosecutor's remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 180-81.  A petitioner must demonstrate that the allegedly improper comments made by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181 (quoting *Donnelly*, 416 U.S. at 643).

In order to assess a claim that a prosecutor's comments rendered a trial so fundamentally unfair as to deny a petitioner due process, it is necessary to examine the entire proceedings and place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987).  A reviewing court must keep in mind that during closing argument a prosecutor has wide latitude to make reasonable inferences based on the evidence. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

Prosecutorial misconduct which rises to the level of a constitutional violation nonetheless provides a basis for federal habeas relief only if the misconduct is deemed prejudicial under the test announced by the Supreme Court in *Brecht*.  *See Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).  Under *Brecht*, habeas relief may be granted only if an error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637

REPORT AND RECOMMENDATION
PAGE - 27

1    (1993).

2         Petitioner presented his prosecutorial misconduct claim to the state courts on direct appeal

3    in his *pro se* statement of additional grounds.  (*See* Dkt. 33, Ex. 7.)  Petitioner identified therein

4    three comments made by the prosecutor during rebuttal closing argument which he argued were

5    improper and prejudicial and therefore required reversal of his convictions and remand for a new

6    trial.  (*Id.*)  The three challenged comments were as follows: (1) "pretend for a minute that this

7    was a child molestation case;" (2) "he doesn't deny it.  He does not deny that he is having sexual

8    chats with these boys;" and, (3) "let him go. Send him home."  (*See id.*)  Petitioner's counsel

9    objected to each of the challenged comments and the trial court sustained the objections.  (*See* Dkt.

10   42, Ex. 60 at 100-01, 102, 106-07.)  The Court of Appeals, on direct review, concluded that because

11   a prompt objection was made to each of the challenged remarks, and the objections were sustained,

12   the remarks did not provide a basis for further review.[4]  (Dkt. 33, Ex. 2 at 8.)

13        Petitioner fails to show that the state court adjudication of his prosecutorial misconduct

14   claim was unreasonable.  Not only did the trial court sustain objections to the challenged

15   comments, the jurors were repeatedly reminded during closing argument of the court's instruction

16   that counsel's statements were not evidence, and that the evidence consisted of the testimony of

17   the witnesses and the exhibits admitted into evidence.  (*See* Dkt. 42, Ex. 60 at 33, 60, 100, 102,

18   104.)  Jurors are presumed to follow their instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234

19   (2000) (citing, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)), and nothing in the record before

20   this Court suggests that they did not do so in this instance.  Petitioner has simply not demonstrated

21

22        [4] Petitioner raised his prosecutorial misconduct claim again in his personal restraint proceedings, but both
     the Washington Court of Appeals and the Washington Supreme Court declined to consider the claim because plaintiff

23   had made no showing that the interests of justice required allowing him to relitigate the issue.  (Dkt. 33, Ex. 26 at 8;
     Ex. 28 at 5-6.)

REPORT AND RECOMMENDATION
PAGE - 28

1    that the challenged comments, when viewed in context and in light of the argument as a whole,

2    "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

3    *Darden*, 477 U.S. at 181.  Thus, petitioner's federal habeas petition should be denied with respect

4    to his tenth ground for relief.

5                                  Ground Eleven:  Cumulative Error

6            Petitioner asserts in his eleventh ground for relief that the cumulative effect of the errors

7    of ineffective assistance of counsel and prosecutorial misconduct denied him his right to a fair

8    trial.  (*See* Dkt. 6 at 22; Dkt. 39 at 101-03.)  Even where no single error rises to the level of a

9    constitutional violation, "the combined effect of multiple trial court errors violates due process

10   where it renders the resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922,

11   927 (9th Cir. 2007).

12           The Washington Supreme Court rejected petitioner's cumulative error claim in his personal

13   restraint proceedings:

14                   Finally, Mr. Navarro argues that the acting chief judge should have granted
                 the petition based on cumulative error.  But he fails to show sufficient accumulation
15               of errors to justify relief.  *See In re Pers. Restraint of Lord*, 123 Wn.2d 296, 332,
                 868 P.2d 835 (1994) (no cumulative error if no error at all).
16

17   (Dkt. 33, Ex. 28 at 6.)

18           Petitioner fails to demonstrate that the state court's adjudication of his cumulative error

19   claim was contrary to, or constitutes an unreasonable application of, clearly established federal

20   law.  Petitioner specifically limits this claim to the cumulative effect of the errors of ineffective

21   assistance of counsel and prosecutorial misconduct.  As explained above, petitioner has not shown

22   the existence of any constitutional error arising out of his trial counsel's performance, nor has he

23   shown that the prosecutor's comments, albeit improper, were sufficient to implicate due process

REPORT AND RECOMMENDATION
PAGE - 29

concerns. Petitioner has not demonstrated that any of the errors alleged in his petition, either singularly or cumulatively, denied him a fair trial and, thus, his federal habeas petition should be denied with respect to his final ground for relief.

### Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

### CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

### OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions

REPORT AND RECOMMENDATION
PAGE - 30

calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 3, 2020**.

DATED this 6th day of March, 2020.

<br>

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 31